0IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAKEENA S. MYRICK, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | No.: 11-2791 |
| | : | |
| COLLINGDALE BOROUGH AND | : | |
| POLICE OFFICER BRIAN FISH | : | |
|     Defendants. | : | |

# M E M O R A N D U M

SITARSKI, M. J.                                                October 12, 2012

Currently pending before the Court is a motion for summary judgment filed by

Defendants Collingdale Borough and Police Officer Brian Fish,[1] Doc. No. 22, and Plaintiff's

response thereto.  Doc. No. 24.  For the following reasons, the motion will be **GRANTED IN**

**PART and DENIED IN PART**.

## I.  INTRODUCTION

Sakeena Myrick ("Plaintiff") initiated this lawsuit against Collingdale Borough and

Police Officer Brian Fish ("Defendants") by filing a Complaint on April 26, 2011.  Doc. No. 1.

Plaintiff asserted various claims against Collingdale Borough and Officer Fish arising from an

incident involving an automobile collision occurring on May 31, 2009.  *Id.* at ¶¶ 68, 76-77.

Defendants' filed a motion to dismiss; thereafter, Plaintiff agreed to withdraw the claims for

deprivation of access to the courts (including First Amendment claims), due process claims and

---

[1]  Originally, Plaintiff brought claims against both Police Officer Brian Fish and
Collingdale Borough.  However, Plaintiff has agreed to withdraw the municipal liability claim
against Collingdale Borough.  Doc. No. 24 at 2, n.1.  The current summary judgment motion thus
addresses the remaining claims, against Police Officer Brian Fish in his individual capacity

the state law invasion of privacy/false light claims.  Doc. No. 8.  As against Police Officer Brian

Fish ("Fish"), Plaintiff first asserts claims under 42 U.S.C. § 1983 ("1983") for an alleged

violation of her civil rights.  Specifically, Plaintiff asserts claims of excessive force, false arrest,

and malicious prosecution (Count II).  Doc. No. 1; *see also* Doc. No 24-1.  Plaintiff also brings

pendent state law tort claims of assault and battery, false arrest, abuse of process, malicious

prosecution and intentional infliction of emotional distress (Count V).  *Id.* at ¶ 68.  Finally,

Plaintiff brings a negligence claim (Count VI).  On October 19, 2011, Defendants filed an

answer.  Doc. No. 11.

On January 24, 2012, the parties consented to the exercise of jurisdiction by a United

States Magistrate Judge under 28 U.S.C. 632(c) and Federal Rule of Civil Procedure 73, and the

matter was referred to me.  Doc. No. 14.

Discovery in this matter closed on May 30, 2012.  Doc. No. 17.  After the close of

discovery, Plaintiff agreed to dismiss the Borough of Collingdale as a defendant on all federal

claims.  Doc. No. 24-1, at 3.  Thus, only federal claims for excessive force, malicious prosecution

and false arrest remain against Fish.

On June 15, 2012, Defendants filed the instant motion for partial summary judgment.

Doc. No. 22.  Defendants argue that summary judgment on the claim of excessive force and

assault and battery is appropriate because the evidence "clearly establishes that the impact

between the vehicle operated by Officer Fish and that of Plaintiff was accidental and

unintended."  Doc. No. 22, at 13.  Defendants further argue that summary judgment on Plaintiff's

claims of false arrest, abuse of process and malicious prosecution should be granted because it is

undisputed that Fish had probable cause to take the actions that he took.  *Id.* at 6-7.  Defendants

also argue that summary judgment is appropriate on the intentional infliction of emotional distress claim because Fish's actions were not "extreme or outrageous," and because Plaintiff has not provided the medical evidence required to support this claim. *Id.* at 7-8. Finally, Defendants argue that the federal claims against Fish are barred by qualified immunity. *Id*. at 3.

On July 6, 2012, Plaintiff filed a Response to Defendants' motion for summary judgment. Doc. No. 24. Plaintiff argues that there are triable issues of material fact for each claim, and thus summary judgment is inappropriate. *Id.*

The matter is now ripe for disposition.


## II.      FACTUAL BACKGROUND[2]

### A.      The Parties

Plaintiff is a thirty-two year old woman currently residing in Philadelphia County, Pennsylvania, with her nine year old son, Caleb. Myrick Dep. at 6, 18. Since the incident at issue, she has been unemployed, and she has allegedly been suffering from a variety of physical ailments. *Id.* at 78.

Defendant Fish is currently a part-time officer in the Alden Borough Police Department. Fish Dep. at 8. On the date of the incident – May 31, 2009 – Fish was a part-time officer in the Collingdale Borough Police Department, where he worked from July 2007 through July 2011. *Id.* at 12. On the date of the incident, he was acting in his capacity as a police officer, and was in the middle of an eight hour shift. *Id.* at 18-19.

---

[2] Except as specifically noted, the following facts are undisputed.

**B.      The May 31, 2009 Incident.**

On May 31, 2009, Plaintiff was attending a barbecue at her cousin, Yolanda's, home,

located in the Borough of Collingdale on Mildred Street, across from the local firehouse.  Myrick

Dep. at 18-19.  Plaintiff left the barbecue at some point in the late afternoon to pick up her

boyfriend, Lionell.  *Id.* at 19.  Plaintiff got into her mother's car, a Ford Explorer, which was

parked on Mildred Street.  *Id.* at 21.  After getting into the car, she pulled up to the end of

Mildred Street to take a right onto MacDade Boulevard ("MacDade").  *Id.* at 22.  Plaintiff

contends that she came to a complete stop at the stop sign at the intersection of Mildred and

MacDade; Fish disputes this.[3]  *Id.* at 23-24.  Shortly after turning right onto MacDade, Plaintiff

claims that she made eye contact with Fish, who was sitting in front of the firehouse, although his

exact position is in dispute.[4]  *Id.* at 25-26, 30-31.  After Plaintiff passed the firehouse, Fish pulled

onto the roadway and attempted to pull Plaintiff's vehicle over.[5]  Fish Dep. at 34-36.  Plaintiff

turned right onto Rhodes Street shortly after passing the firehouse, apparently in order to "circle

───────────────

[3]  Fish asserts that Plaintiff did not come to a complete stop, and thus committed a traffic violation.  Fish Dep. at 30-32.  He also asserts that Plaintiff pulled out in front of two vehicles without yielding, also a traffic violation.  *Id.* at 32-33.  Plaintiff disputes this, and asserts that she stopped at the white line accompanying the stop sign, and then again after moving up to the curb in order to see if there was oncoming traffic.  Myrick Dep. at 23-24.

[4]  Plaintiff avers that Fish was sitting in a lawn chair in front of the firehouse "drinking and lollygagging" with two firemen.  Myrick Dep. at 30.  Fish states that he was sitting in his police cruiser when he saw Plaintiff disregard the stop sign.  Fish Dep. at 29.

[5]  It is undisputed that Fish attempted to pull Plaintiff over, but his motive for doing so is disputed.  Fish asserts that he saw Plaintiff commit two traffic violations: she did not stop at the sign, and then failed to yield for oncoming traffic when turning onto MacDade.  Fish Dep. at 30-32.  Plaintiff asserts that when she made eye contact with Fish she shook her head in disgust at his laziness, and (she presumes), Fish pursued her in retaliation for that gesture.  Myrick Dep. at 30.

back around" to her cousin's house.[6]  Myrick Dep. at 32.

       After turning onto Rhodes Street, Plaintiff turned right into a driveway. [7]  Myrick Dep. at 34-36.  The driveway was positioned just beside a large building such that, from the corner of Rhodes and MacDade from which Fish was coming, one could not see past the building onto the driveway.[8]  Fish Dep. at 46, Doc. No. 22, Ex. 4 at 9, 14.  Fish, who had been following Plaintiff, also turned into the driveway.  The front bumper of Fish's patrol car struck the rear of Plaintiff's car.  Myrick Dep. at 39, Fish Dep. at. 50.

       The exact circumstances of the collision are very much in dispute.  Plaintiff asserts that her car was not moving, and she had her foot on the brake at the moment of impact.  Myrick Dep. at 39.  Fish asserts that he saw Plaintiff pulling into the driveway just as he was turning onto Rhodes Street.  He further notes that Plaintiff's car disappeared behind the building, as described above.  Fish Dep. at 40, 42-43.  He testified that he pulled into the driveway to prevent Plaintiff's exit, because he believed she was attempting to elude him.[9]  Fish Dep. 59.  As he was pulling

---

    [6]  Again, the reason for this action is in dispute.  Plaintiff claims she left her "bluetooth" phone device at her cousin's house, and she was going back to get it.  Myrick Dep. at 39.  Fish believes that Plaintiff was taking action to "elude him."  Fish Dep. at 59.

    [7]  Plaintiff asserts that she saw Fish coming with his overhead lights on, and wanted to pull over to let him pass, but there were no parking spots, so she pulled into the driveway.  Myrick Dep. at 35.  Fish asserts that Plaintiff pulled into the driveway to elude him.  Fish Dep at 59.

    [8]  In other words, if Plaintiff was fully pulled into the driveway, one would not be able to see her from the corner of MacDade and Rhodes, the direction from which Fish was coming.  Fish testified: "once she turned up Rhodes behind the building, I could not see her."  Fish Dep. at 37, line 3-4.  Fish testified that he did not see if and where Plaintiff came to a stop once she turned into the driveway.  Fish Dep. at 40.

    [9]  When asked in his deposition why he didn't just pull in front of the driveway instead of making a right turn into it, Fish explained "It's not really tactically practical.  It puts me at a

into the driveway, the two vehicles collided.  Fish doesn't know how the collision occurred, but asserts that he was attempting to stop his vehicle.  He testified that he had two feet on the brake pedal, and that his patrol car left skid marks on the road.  *Id.* at 45; *see also* Doc. No. 22, Ex. 4 at 9-10.  It is undisputed that the collision occurred as Fish was turning into the driveway.[10]

### C.      Events after the Collision

Shortly after the collision, at least two other police officers arrived.  In addition, Plaintiff's cousin Yolanda, her boyfriend, Melvin, as well as Plaintiff's boyfriend, Lionell, arrived.  Myrick Dep. at 50.  Plaintiff remained in her car.  At some point, Fish learned that Plaintiff was complaining of leg pain.  Fish Dep. at 61-62.  An ambulance was called to the location, and Plaintiff was taken via ambulance to the hospital.  Myrick Dep. at 58.  Plaintiff was not arrested or charged with any crimes at the scene.  *Id.* at 107; *see also* Fish Dep. at 73.  At her deposition, Plaintiff testified that she heard nothing further from the police that day.  *Id.  See also* Fish Dep. at 73.

Fish relayed the events as he perceived them to the responding officers at the scene, discussed the appropriate charges to file, and then "went back to the station to do the actual charging of the offenses."  Fish Dep. at 74.  Fish later clarified in his deposition that the "actual

---

disadvantage, because I'd lose sight of her getting out of my car and coming around.  We just typically pull in so you can face them.  It puts your engine block and everything else between you and the other vehicle."  Fish Dep at 60, line 17-22.

[10]  Joanne King, who lived across from the scene of the accident, stated that she saw the collision, and gave a written statement, and also was deposed in this litigation.  Fish Dep. at 68, *see also* Doc. No. 22, Ex. 4 at 15.  Ms. King testified that Plaintiff was reversing at the moment of impact, and Defendant had put his car in park, and was getting out of his vehicle.  Doc. 22, Ex. 5.  Of course, this seems to conflict with Plaintiff's version of events.  Since we must take the facts in the light most favorable to Plaintiff on summary judgment, we will disregard the testimony of Ms. King.

charging of the offenses" entailed filling out an incident report.[11]  *Id.* at 76.  Fish also provided an

"Affidavit of Probable Cause" that was sworn to and subscribed on June 2, 2009.[12]  *Id.* at 75.

Subsequently, a warrant was issued for Plaintiff's arrest based on the Affidavit of

Probable Cause provided by Fish.  The Police Criminal Complaint listed the following offenses

and corresponding "acts of accused associated with offense":

> 1.  aggravated assault in violation of 18 Pa.Con.Stat. 2702(a)(2)
> 2.  recklessly endangering another person in violation of 18 Pa.Con.Stat. 2705
> 3.  stop signs violation of 75 Pa.Con.Stat. 3323
> 4.  careless driving in violation of  75 Pa. Con. Stat. 3714
> 5.  reckless driving in violation of 75 Pa.Con.Stat. 3736
> 6.  fleeing or attempting to elude police officer in violation of 75 Pa.Con.Stat. 3733
> 7.  trespass by motor vehicle in violation of 75Pa.Con.Stat..3717
> 8.  duty of a driver on approach of emergency vehicle in violation of 75 Pa.Con.Stat. 3325

Doc. No. 22, Ex. 4 at 16-24.  The warrant unit went to Plaintiff's house a few days after the

collision and arrested her.  Myrick Dep. at 109.  Fish was not present at the time of the arrest.[13]

*Id.* at 108.  Plaintiff was transported to Chester and placed in a holding cell until she received a

bail hearing that same morning.  She was released after a bail hearing and returned home that

night.  *Id.* at 111-112.

Plaintiff was initially charged with aggravated assault (18 Pa.Con.Stat. 2702(a)(2)),

---

[11]  The incident reports states that "a summons will be sent out for Miss Myrick."

[12]  The Affidavit of Probable Cause is essentially the same as the incident report.  Fish testified that "I do believe I did the incident report first and copied and pasted it to the criminal complaint."  Fish Dep. At 83, line 7-8.

[13]  Officer Fish also testified that he was not aware of the circumstances surrounding Plaintiff's being taken into custody.  Fish Dep. at 79.

recklessly endangering another person (18 Pa.Con.Stat. 2705), fleeing or attempting to elude a

police officer (75 Pa.Con.Stat. 3733), as well as summary offenses of Careless Driving (75 Pa.

Con. Stat. 3714), reckless driving (75 Pa.Con.Stat. 3736), Trespass by Motor Vehicle

(75Pa.Con.Stat..3717), and failure to yield to emergency vehicle (75 Pa.Con.Stat. 3325).  Doc.

No. 1, ¶ 17-20.  Plaintiff waived her Preliminary Hearing.  Myrick Dep. at 111, Doc. No. 22, Ex.

9.  Prior to trial, the felony aggravated assault charge was dropped, and Plaintiff was charged

instead with misdemeanor simple assault (18 Pa.Con.Stat. 2701).  Doc. No. 1 at ¶ 20.

On May 27, 2010, a trial was held before the Honorable Judge James P. Bradley in the

Court of Common Pleas of Delaware County.[14]  Doc. No. 1 at ¶ 28.  After hearing testimony,

Judge Bradley found Plaintiff not guilty of all charges.  Specifically, Judge Bradley stated: "The

Court finds that the testimony between Ms. King and Officer Fish are – they simply cannot be

reconciled.  Consequently the Court finds that there is reasonable doubt as to these charges.

Accordingly the Defendant is not – is found not guilty on all charges."  22-1, No. CR 6002-2009

(Ct. Com. Pl. Del. May 27, 2010).


III.   STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is

---

[14]   The trial proceeded on the following charges: Simple Assault, Recklessly Endangering
Another person, Fleeing or Attempting to Allude a Police Officer, and Reckless driving.  *Id.* at ¶
27.

sufficient evidence from which a jury could find in favor of the non-moving party. *Id.* It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) *(citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

9

IV.     **DISCUSSION**

A.     **Fourth Amendment Excessive Force**

Plaintiff claims that her Fourth Amendment rights were violated because Fish used "unreasonable force" when he intentionally collided with her vehicle in attempting to arrest her. Fish asserts summary judgment is appropriate because "there is simply no evidence in this case from which Plaintiff can argue that Defendant intentionally struck her vehicle." Doc. No. 22 at 14. Plaintiff argues that summary judgment is inappropriate because evidence, in the form of her testimony "clearly implies intent on the part of Defendant Fish." Doc. 24-1 at 17.

The Fourth Amendment guarantees, among other things, the right to be free from unreasonable seizures. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)).

Section 1983 provides remedies for rights already existing in the Constitution or other federal statutes. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995 ). Thus, in this case, Plaintiff is entitled to relief only if she can establish that her constitutional rights were violated. In an excessive force context, for force used in effectuating an arrest or "investigatory stop," the proper analysis focuses on whether the plaintiff's Fourth Amendment rights were violated. *Graham v. Connor,* 490 U.S. 386, 394 (1989). Plaintiff must first establish that there was a "seizure" that implicated her Fourth Amendment right to be free from excessive force. A Fourth Amendment seizure occurs if there is: (1) governmental action; (2) that restrains the liberty of a citizen; and (3) through means intentionally applied. *Brower v. County of Inyo*, 489

U.S. 593, 596-597 (1989).

In the case at bar, it is the third element that is at issue.  In determining whether there has been a seizure within the meaning of the Fourth Amendment, the Court must consider the question of "intent."  In general, an officer's "subjective" intent or bad faith motive is <u>not</u> relevant to the Fourth Amendment excessive force analysis.  *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996).  Rather, the appropriate inquiry is whether the officer intended to use the force applied; that is, whether the officer's actions were "volitional."  *See Brendlin v. California*, 551 U.S. 249 (2007) (cannot shift inquiry from intent of officer as objectively manifested to the motive of officer for taking the intentional action to stop the car).

In *Brower*, the Supreme Court explained this distinction by describing a hypothetical car chase.  The Supreme Court explained that if an officer intended to stop a fleeing suspect by a show of authority, such as flashing lights, but actually stopped the suspect by accidentally striking them, that would not constitute means intentionally applied.  *Brower*, 489 U.S. at 597.  Thus, there would be no "seizure" within the meaning of the Fourth Amendment.  However, if during an identical chase, the officer came up beside the suspect and intentionally "sideswiped it," the termination of the suspects movement would have been a Fourth Amendment seizure.  *Id.*

*Brower* and its progeny stand for the proposition that if a defendant's objectively manifested actions were volitional, then a Fourth Amendment seizure occurred when a suspect's freedom of movement was terminated by those volitional actions.  If there was no intentional act, then there is no seizure.  *See Brice v. City of York*, 528 F. Supp. 2d 504 (M.D.Pa. 2007) (accidental discharge of gun during arrest doesn't constitute a seizure); *Troublefield v. City of Harrisburg Bureau of Police*, 789 F.Supp, 160, 166 (M.D. Pa. 1992), *aff'd* 980 F.2d 724 (3d Cir.

11

1992) (excessive force claim requires some nature of volitional act on part of state actor that causes harm to plaintiff for an excessive force claim to stand).[15]

Thus, the analysis for purposes of this motion turns on whether there are material issues of fact as to whether Fish acted intentionally or accidentally in striking Plaintiff's car.  Fish states that he accidentally struck Plaintiff's car, and points to the absence of "any evidence in the record which would indicate that Defendant intentionally struck Plaintiff's car."[16]  Doc. No. 22 at 14. Plaintiff presumes that Fish struck her car intentionally because he was angry at her for shaking her head at him when she saw him "lollygagging" outside the firehouse.  In support of this argument, Plaintiff relies upon her "testimonial affidavit," a document prepared and executed by her attorney which sets forth her anticipated trial testimony.[17]  Doc. 24, Ex. 6.  Specifically,

---

[15]  *See also Daniels v. Williams*, 474 U.S. 327 (1986) (rejecting substantive due process claim because the U.S. constitution does not address injuries inflicted by governmental negligence); *Oliveros v. Mitchell*, 449 F.3d 1091, 1095 (10th Cir. 2006) (1983 claim of excessive force and unreasonable seizure are predicated on intentional conduct); *Walker v. Davis*, 643 F. Supp. 2d 921 (W.D. Ky. 2009) (the only question of intent is whether the police conduct demonstrated an objective intention to stop the vehicle)

[16]  In a summary judgment context, if the moving party does not have the burden of proof at trial, they can meet their initial summary judgment burden by pointing to the absence of any evidence in record.  *Celotex Corp.,* 477 U.S. at 322-24.

[17]  Testimonial affidavits may be considered on summary judgment in federal courts.  *See Nationwide Mut. Fire Ins. Co. v. Craig*, 1995 U.S. Dist. LEXIS 16844 (E.D. Pa. Nov. 9, 1995) (rejecting the *Nanty-Glo* rule used in Pennsylvania state courts and allowing a party to meet its summary judgment burden with an uncontradicted testimonial affidavit); *see also Schmitt v. State Farm Ins. Co.*, 2011 U.S. Dist. LEXIS 105836 (W.D. Pa., Sept. 16, 2011) (noting that testimonial affidavits may be considered in summary judgment under Federal Rule of Civil Procedure 56).

The testimonial affidavit in this instance has been submitted by Plaintiff's lawyer and summarizes Plaintiff's anticipated trial testimony.   *See*  Doc. 24, Ex. 6.  Plaintiff has not personally submitted her own affidavit, or testified to these issues at her deposition.  This Court will nevertheless consider the testimonial affidavit on summary judgment, and will presume that

Plaintiff will testify that:

    (1)    she "believes Defendant smashed into the rear of Plaintiff's stopped motor vehicle";

    (2)    that she did not commit the traffic violation that caused Defendant to initiate the pursuit,

    (3)    that there were no children playing in the street,

    (4)    that when she first saw Defendant he was sitting in a chair "lollygagging" and she shook her head at him in disgust. Plaintiff believes this made Defendant angry, and caused him to chase her with the intent of trumping up charges against her and also led to the intentional rear-ending of her vehicle in anger.

Doc. No. 24, Ex. 6.  Plaintiff argues that her testimonial affidavit constitutes sufficient evidence to submit the issue to a jury, and creates a triable issue of fact that will turn on the jury's determination of her credibility as a witness.  This Court disagrees.  There is no evidence of record that creates a material issue of fact on the question of whether Plaintiff was seized by means *intentionally* applied.

        Plaintiff testifies that she "believes Defendant smashed into her vehicle."  Importantly, there are no facts of record to support the notion that Fish <u>intentionally</u> "smashed into her vehicle."  Indeed, Plaintiff's deposition testimony confirms that she does not recall the circumstances immediately preceding the collision.  She testified that she pulled into the driveway because she saw Fish's car coming up fast behind her, with his lights activated, and she wanted to get out of the way.  Plaintiff stated that once in the driveway, she attempted to put the car into park.  Myrick Dep. at 35.  When asked whether she ever got the car into park she testified, "I'm not sure.  My hand was on the gear, I was putting it into park, then boom.  And the next thing I know I was in the gate."  Myrick Dep. at 39.  In response to a question regarding

_____

Plaintiff will offer trial testimony as outlined therein.

whether she ever put the car into reverse, she stated "I don't remember, but I don't think I left the gear shift in reverse.  I was trying to put it into park.  So it could have been in neutral at that time.  Like I don't know exactly where the gearshift was when this happened.  I was taking it out of drive, going to put it into park, when I was hit."  *Id.* at 40-41.

Fish testified during his deposition that he turned into the driveway, and did so in order to block her in.  *Id.* at 59-60.  Fish stated that he had lost sight of Plaintiff's vehicle when she pulled into the driveway, noting that his view was blocked by a building next to the driveway.  *Id.* at 42.  Fish states that he did not see Plaintiff's car again until he had begun his turn into the driveway.  *Id.* at 44.  Fish states that he attempted to stop after turning into the driveway, by putting both feet on the brake pedal.  *Id.* at 45.  Fish testified that he heard "screeching" from his car, and that the patrol car left skid marks, a photo of which is contained in the record.  *Id.* at 45, Doc No. 22, Ex. 4 at 9-10.  When asked how much time elapsed between when Fish first regained vision of Plaintiff's vehicle in the driveway and the collision occurred, Fish testified: "seconds, I couldn't tell you how many," and later clarified "it wasn't more than ten.  It was a short time."  *Id.* at 41, line 19-22.[18]  Plaintiff offers no evidence to contradict Fish's testimony that he forcefully applied the brakes.  Indeed, as noted above, she doesn't know exactly what happened in the seconds prior to Fish's car striking hers.

A factually similar situation involving an excessive force claim based on a police officer hitting a suspect with a car was recently addressed in *Bellmon v. City of Philadelphia*, 2012 WL 3994839 (E.D.Pa. Sept. 11, 2012).  In *Bellmon*, two officers began pursuing the plaintiff while he

---

[18]  Fish claims that he injured his shins from slamming on the brakes.  *Id. at 83.*  Plaintiff apparently disputes this, pointing out that Fish did not receive any medical treatment.  Fish does not dispute the fact he did not seek treatment for any claimed injuries.  Fish Dep. at 83.

was driving.  *Id.* at *1.  Plaintiff crashed his car, then got out of the car and began running.  *Id.*
The officers continued to pursue him, and eventually hit the plaintiff with the police cruiser.  *Id.*
The plaintiff testified that prior to being hit, he heard a car accelerate.  *Id.* at *6.  The plaintiff
brought an excessive force claim, arguing that the officer intentionally hit him with the vehicle,
and that such was an unreasonable use of force.  *Id.* at *2.  The officers moved for summary
judgment, arguing that they accidentally hit him.  The Court denied summary judgment on the
grounds that there was evidence – plaintiff's testimony that he heard the vehicle accelerate –
from which a reasonable jury could infer that the police officer acted intentionally.  *Id.*  Thus,
summary judgment was denied in that case because there was an issue of material fact as to
whether the defendant police officer intentionally or accidentally hit the plaintiff in making an
arrest.  *Id.*

Similarly, in *Taylor v. Moletsky*, a police officer hit a suspect with her car in pursuit of
the suspect.  2010 WL 299747 (E.D.Pa. Jan. 22, 2010).  In *Taylor*, the suspect had initially
eluded the police, but was spotted hours later by the defendant police officer.  *Id.* at *1.  The
plaintiff fled on foot from the officer through a parking lot as the officer pursued him in a police
cruiser.  Plaintiff was struck by the police cruiser.  *Id.*  The defendant officer moved for summary
judgment, arguing that the officer struck the defendant accidentally.  Like in *Bellmon*, summary
judgment was denied because the plaintiff's testimony established a material issue of fact.  *Id.* at
*4  The plaintiff in *Taylor* testified that, as he was running from the police officer through a
parking lot, the defendant officer was driving behind him.  *Id.* at *2.  Like in *Bellmon*, the
plaintiff testified that he heard the police cruiser accelerate prior to hitting him.  *Id.* at *2, n.8.
The Court found that a material issue of fact existed, as the plaintiff's testimony provided

evidence from which a reasonable juror could infer that the officer hit him intentionally. *Id.* at
*4.

Likewise, in *Ferguson v. Commonwealth of Pennsylvania*, defendant police officers
moved for summary judgment on an excessive force claim arising out of a collision with the
plaintiff. 2009 WL 723426 (W.D. Pa. Mar. 13, 2009). Like the instant case, the officers argued
that they did not intend to hit the plaintiff. *Id.* at *4. Originally, the plaintiff had been a
passenger in a car being chased by the defendant officers. *Id.* at *2. At some point during the
pursuit, the plaintiff was dropped off on the side of the road; thereafter, she was struck by the
police cruiser. *Id.* The plaintiff testified that defendant saw her standing on the side of the road
and failed to brake prior to hitting her. *Id.* at *4. The plaintiff's testimony was buttressed by the
officer's admission that he saw her standing on the side of the road prior to hitting her, as
evidenced by his later comment that plaintiff "looked like a deer in the headlights." *Id.*
Moreover, the collision occurred while plaintiff was standing alongside an open road, further
supporting the contention that the officer saw her prior to the collision. *Id.* The court denied
summary judgment. Considering the manner in which the collision occurred, the officer's
statement, and the plaintiff's testimony regarding the collision, the Court concluded there were
sufficient facts from which a jury might infer that the officer intentionally hit the plaintiff. *Id.*

Turning to the present case, this Court finds that the evidence supporting the excessive
force claim is qualitatively different from the evidence presented in *Bellmon*, *Taylor*, and
*Ferguson*. Plaintiff offers no facts to support her argument that Fish *intentionally* hit her. She
states only that she did not back into Fish's car, but that he rammed hers from behind. Doc. No.
24, Ex. 6. There is no testimony that Fish accelerated prior to the collision, or that Fish had a

16

clear view of the Plaintiff's vehicle and had opportunity to stop or otherwise avoid the collision. Indeed, Plaintiff offers no evidence whatsoever detailing the immediate circumstances of the accident.

Plaintiff, as the non-moving party with the burden of proof at trial, must present something more than mere allegations, general denials, vague statements, or suspicions.  *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson*, 477 U.S. at 257; *see also Taylor*, 2010 WL 299747 at *3 *citing Marshall v. Pen Township*, 2008 WL 7327819 (W.D.Pa. 2009) ("in opposing a motion for summary judgment, the non-moving party must point to specific facts rather than to 'some metaphysical doubt as to the material facts.'  This means the nonmoving party cannot defeat summary judgment by relying on unsupported statements, bare allegations or speculation").  Plaintiff has pointed to no facts to support her argument that Fish acted volitionally in striking her vehicle with his.  Rather, all of the relevant undisputed facts and circumstances indicate the opposite.  Plaintiff was situated in a driveway in which she could not be seen by someone coming down the street.  *See* Doc. No. 24, Ex. 4 at 9.  Fish was not able to see Plaintiff until he had begun his turn into the driveway.  Fish Dep. at 40.  There is no evidence to support any contention that he sped up when he saw her vehicle in the driveway.  Indeed, this case more closely resembles the *Brower* hypothetical in which a police officer attempts to stop a suspect by a show of authority, but actually stops the suspect by accidentally losing control of the car.  The Supreme Court held that such a circumstance will not support an excessive force

claim.[19]  489 U.S. at 597.

Further, this is not the type of situation as in *Taylor*, *Ferguson*, and *Bellmon*, where the plaintiffs' testimony, coupled with the circumstances of the collision, allowed a jury to infer intent.  In *Taylor*, *Ferguson,* and *Bellmon,* the evidence arguably supported the conclusion that the defendant officers had ample ability to see the plaintiff and take corrective actions before striking them.  The circumstances of those cases, when coupled with the plaintiffs' testimony, arguably allowed for an inference of intent.  In this case, Plaintiff's car was not visible from the road.  Fish knew Plaintiff had turned into the driveway, but the building alongside the driveway prevented him from seeing her position and taking corrective action to avoid striking her.[20]

To be sure, in ruling on summary judgment, reasonable inferences will be drawn in Plaintiff's favor, but this Court should not  stretch the bounds of this standard to encompass inferences that have no support in fact.  Thus, while the circumstances in *Taylor, Ferguson and Bellmon* provided <u>some</u> factual basis from which a jury could make inferences of volition and intent, no such factual bases exist in this case.

---

[19]  In *Brower*, the Supreme Court addressed a situation in which a roadblock was set up to stop a fleeing suspect's movement.  The suspect was killed when he collided with the roadblock.  489. U.S. at 598.  In reviewing an excessive force claim by the estate, the Supreme Court stated that "when a person is stopped by the very motion set in force to stop her, that is enough for a seizure." *Id.* at 599.  Thus, in *Brower*, the Supreme Court held that since the suspect was stopped by a roadblock set in place to stop them, a seizure had occurred even though the officers didn't intend for the suspect to actually hit it.  *Id.*  The situation in this instance is different, as Fish was attempting to block Plaintiff in, but was unable to "set the road-block in motion" because he could not stop his car.  Thus, this isn't a situation in which "the very motion set in force to stop her actually did stop her."

[20]  Fish's deposition testimony establishes that he only saw her seconds before striking her.  Fish Dep. at 40.

In sum, this Court concludes that there are no facts from which a reasonable jury could infer that Fish intentionally struck Plaintiff's vehicle.  Summary judgment is granted as to Plaintiff's excessive force claim.

**B.      State Law Assault and Battery**

Plaintiff brings state law claims of assault and battery, also arising out of Plaintiff's vehicle being struck by Fish's police cruiser.  Of course, assault and battery are both "intentional torts."  Under Pennsylvania law, "an assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  *Renk v. City of Pittsburgh*, 537 Pa. 68, *citing Cohen v. Lit Brothers*, 166 Pa. Super. 206, 209, 70 A.2d 419, 421 (1950).  In the context of force used in effectuating an arrest, the reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery. However, both assault and battery and excessive force require that the use of force be intentional, or volitional.  As noted above, there are no facts of record to support the contention that Fish intentionally struck Plaintiff's car.  Thus, there is no evidence to support the conclusion that Fish acted with the requisite intent "to do an injury" to Plaintiff, and summary judgment is appropriate on the assault and battery claims.

**C.      Plaintiff's Claims Arising Out of Criminal Charges.**

Defendants move for summary judgment on three claims by arguing that the "existence of probable cause defeats the elements necessary to establish a false arrest, abuse of process and malicious prosecution."  Doc. No. 22 at 17.

Probable cause to arrest exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (*quoting Orsatti*, 71 F.3d at 482).  The determination is an objective one, that looks at the facts and circumstances available to the officer at the time of arrest.  *Beck v. Ohio* 379 U.S. 89 (1964).  "Typically, the existence of probable cause in a 1983 action is a question of fact."  *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).  However, a court may find that probable cause existed if the evidence, viewed in the light most favorable to the plaintiff, could not reasonably support a contrary factual finding. *Id.*

The warrant issued for Plaintiff's arrest charged her with aggravated assault, recklessly endangering another person, attempting to elude a police officer, careless driving, reckless driving, trespass by motor vehicle and failure to yield to an emergency vehicle.  Doc. No. 1 at ¶ 17-21.  As detailed below, there are issues of fact regarding the existence of probable cause as to each of these charges.

Fish argues that he observed Plaintiff failing to stop at a stop sign, which constituted probable cause to pull Plaintiff over for a traffic violation.  Fish Dep. at 31.  After he began his effort to conduct a traffic stop, Fish testified that he observed Plaintiff's vehicle traveling above the speed limit in an area where there were a number of children.  Thus, Fish contends, he had probable cause to charge Plaintiff with the charges of reckless driving and careless driving.  *Id.* at 88.  Finally, Fish avers that the eyewitness's statement that Plaintiff backed into him, gave him probable cause to charge Plaintiff with aggravated assault, because he was injured while Plaintiff

was, in his belief, attempting to elude him.[21]  *Id.* at 79.

Plaintiff disputes all of these facts.  Plaintiff states that she stopped at the stop sign at two separate instances, and only turned right onto MacDade after she had "looked both ways and made sure it was safe to proceed."  Myrick Dep. at 22-24.  She states she did not go over the speed limit, and her testimonial affidavit suggests that she will testify that there were no children in the area.  Doc. No. 24, Ex. 6.  Finally, Plaintiff states that she was not attempting to flee from Fish; rather, she was unaware that she was the one being pulled over.  *Id*. at 35.  Further, she will testify that she did not back into Fish.  Doc. No. 24, Ex. 6.

If a jury credits Plaintiff's testimony on all of these points, they could reasonably conclude that Fish did not have probable cause to arrest Plaintiff on any of the charges filed against her.  Accordingly, material issues of fact exist regarding whether there was probable cause to arrest Plaintiff on any of these charges.

### 1.   Federal False Arrest under 1983[22]

A claim for false arrest under 1983 requires that the plaintiff demonstrate the arresting

---

[21]  Fish also argues that the mere fact that the criminal case against Plaintiff proceeded to trial establishes probable cause.  This argument fails as a matter of law.  Even if a case goes to trial, a plaintiff may still succeed on a false arrest claim.  Plaintiff is not barred from bringing such a claim if she obtained a favorable result in her trial, as is the case here. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *see also Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (Plaintiff may bring 1983 claim for false arrest against officer who "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in justifying an arrest and those statements are material").

[22]  Plaintiff's Complaint also brings a claim for false arrest under Pennsylvania state law. Doc. No. 1 at ¶ 68.  "A claim for false arrest made under Pennsylvania state law is coextensive with one made under 1983". *Piazza v. Lakkis*, 2012 U.S. Dist. LEXIS 77683 at *39 (*citing Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008)).  Thus, to the extent Fish seeks summary judgment on the state law false arrest claim, the ruling will be the same as that made for the federal false arrest claim.  *See e.g. Kokinda*, 557 F. Supp. 2d at 592 (applying an identical probable cause analysis to federal and state false arrest claims).

officer lacked probable cause to arrest.  *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).   Summary judgment will be proper if there is no material factual dispute that probable cause existed to arrest Plaintiff on just one of those charges.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).

In this instance, Plaintiff was not arrested by Fish at the scene of the accident.  Rather, Plaintiff was arrested pursuant to an arrest warrant issued several days later.   Myreck Dep. at 107;  Fish Dep. at 73.  Fish was not present at the time of the warrant was executed.  Myrick Dep. at 109.  Thus, Plaintiff's false arrest claim against Fish is based on his statements in the affidavit of probable cause underlying Plaintiff's arrest warrant.

A claim for false arrest based on an affidavit of probable cause is evaluated under the test enunciated in *Franks v. Delaware*, 438 U.S. 154 (1978).  The *"Franks* test" requires a plaintiff to show "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary to the finding of probable cause."  *Sherwood v. Mulvihill,* 113 F.3d at 397 *(citing Franks v. Delaware*, 438 U.S. at 171-72).

An officer acts with a "reckless disregard for the truth" when he makes assertions even though he has obvious reasons to doubt the truth of what the officer is asserting.  *Wilson v. Russo*, 212 F.3d 781, 783.  In this instance, Plaintiff provides testimony that, if believed, will allow a reasonable jury to infer that Fish knowingly made false statements of fact in the affidavit of probable cause in order to cover up his own negligence.  Thus, there are material issues of fact as to the first prong of the *Franks* test.

As to the "materiality" prong of the *Franks* test, the plaintiff must show that the assertion was material to a finding of probable cause.  *Id.* at 788.  As noted above, Plaintiff has presented evidence that disputes the facts and statements Fish made in his affidavit of probable cause sufficient to create a genuine issue of material fact regarding whether probable cause existed.

As there are material issues of fact regarding whether Fish's statements in the affidavit of probable cause were made with a "reckless disregard for the truth," summary judgment is inappropriate on this claim.

### 2.    Federal Malicious Prosecution Claim under 1983[23]

A claim for malicious prosecution under 1983 requires that the plaintiff show: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding" *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (*citing Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

A malicious prosecution claim is different from a false arrest claim in that probable cause is needed for <u>all</u> claims, whereas a false arrest claim only requires probable cause to arrest on one

---

[23]  Plaintiff's Complaint also brings a claim for malicious prosecution under Pennsylvania law.  Doc. No. 1 at ¶ 68.  "Malicious prosecution under Pennsylvania law includes the same elements as a 1983 malicious prosecution claim except that it does not require the fifth seizure element."  *Piazza v. Lakkis*, 2012 U.S. Dist. LEXIS 77683 (M.D. Pa. June 5, 2012)(*citing Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).  As noted herein, the central issue in this summary judgment motion is the existence of probable cause.  Since both federal and state malicious prosecution claims require "the proceeding to be initiated without probable cause," the summary judgment ruling as to the federal 1983 malicious prosecution claim will apply equally to the state law malicious prosecution claim.

claim.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (Third Circuit held that probable cause need only exist as to any offense that could be charged under the circumstances). As noted above, there are issues of material fact regarding the existence of probable cause as to all of the criminal charges lodged against Plaintiff.   Accordingly, summary judgment is not appropriate on any portion of Plaintiff's malicious prosecution claim.

### 3.    State Law Abuse of Process Claim

A claim for the intentional tort of "abuse of process" requires the plaintiff to show that "the defendant: (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which it was not designed; and (3) harm has been caused to the plaintiff."  *Werner v. Plater-Zyberk*, 2002 PA Super 42, 799 A.2d 776, 785 (Pa. Super. 2002).  An abuse of process claim is different from a malicious prosecution claim under 1983:  an abuse of process claim lies when prosecution is initiated legitimately, but thereafter is used for an improper purpose. *Napier v. City of New Castle*, 407 Fed. Appx. 578 (3d Cir. 2010) *citing Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989)(*quoting Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977).

Importantly, in an abuse of process claims based on the filing of charges, there must be some subsequent perversion of the process to constitute an abuse of process claim.  *See  Napier v. City of New Castle*, 407 Fed. Appx. 578, 2010 WL 424389 (3d Cir. 2010) (officers initial filing of charges and arrest for improper purpose of avoiding embarrassment constitutes a malicious prosecution claim and not an abuse of process); *Evans v. Durham Life Insurance Co.*, 2001 U.S. Dist. LEXIS 9302, 2001 WL 770803 *2 (E.D. Pa. 2001) (no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions).

In this instance, Plaintiff asserts an abuse of process claim, asserting that Fish filed charges against her in order to cover up his own actions.  Doc. No. 24-1 at 26.  Plaintiff alleges she suffered harm from this in subsequent proceedings by having to pay attorney's fees and court costs.  *Id.*  This argument is unavailing.  The only conduct of Fish's that is alleged to have harmed Plaintiff is the initial filing of charges.  Plaintiff has not alleged that Fish took any subsequent wrongful action during the proceedings other than carrying out the process to its conclusion.  Any wrongful conduct in the initial filing of charges constitutes a claim for malicious prosecution, and not an abuse of process.  *See e.g. Rose,* 871 F.2d at 350 n.17 (3d Cir. 1989).  Accordingly, summary judgment in Defendant's favor is appropriate on Plaintiff's abuse of process claim

**D.     State Law Intentional Infliction of Emotional Distress**

A claim for intentional infliction of emotional distress requires that the plaintiff show: (1) the defendant's conduct was extreme and outrageous; (2) it was intentional or reckless; (3) it caused the plaintiff severe emotional distress; and (4) that distress was severe.  *Hooten v. Pennsylvania College of Optometry*, 601 F. Supp. 1151 (E.D. Pa. 1984)(*citing Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).  Extreme and outrageous conduct is defined as "that which goes beyond all bounds of decency such that the action would be characterized as atrocious and utterly intolerable in a civilized society."[24]  *Id.*

---

[24]  The Restatement (second) of Torts, comment (d) has often been used to further clarify the type of conduct that sustains an intentional infliction of emotional distress claim.  Comment (d) states: "it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See*

*citing D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 .2d 966, 972-73, n.8.  Under Pennsylvania law, a plaintiff must allege physical injury, harm or illness caused by the alleged outrageous conduct.  *Atkinson v. City of Philadelphia,* 2000 U.S. Dist. LEXIS 8500 (E.D.Pa. Jun. 20, 2000); *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D.Pa. 1996).

Fish argues that summary judgment is appropriate because "the purported conduct of Officer Fish in striking the vehicle of Plaintiff was, at most, carelessness or negligence, but it clearly was not outrageous conduct or so extreme and intentional as to cause emotional distress." Doc. No. 22 at 8.  Fish also argues that Plaintiff has not provided competent medical evidence to support her claim.  *Id.*  Plaintiff argues that summary judgment is not appropriate because Fish's conduct of intentionally ramming Plaintiff's car and then trumping up false charges to cover his misconduct is extreme and outrageous enough to support a claim of intentional infliction of emotional distress.

"It is for the court to determine, as a preliminary matter, if the defendant's conduct is so extreme and outrageous as to permit recovery."  *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988);  *Mansamm v. Tuman*, 970 F. Supp. 389, 402-403 (E.D. Pa. 1997).  Fish's conduct in striking Plaintiff's car will not support an intentional infliction claim, as this Court has already found that there is no evidence to support the conclusion that Fish acted intentionally in striking Plaintiff's car.  This Court agrees with Fish, that any carelessness or negligence on Fish's part does not rise to the level of "extreme and outrageous" conduct needed to sustain Plaintiff's claim of intentional infliction of emotional distress.  Thus, Plaintiff cannot defeat Fish's summary judgment motion on that basis.

---

*Hooten*, 601 F. Supp. at 1155, n.1.

Plaintiff also brings an IIED claim based upon Fish's conduct in "trumping up false charges" against Plaintiff to cover up his own misconduct.  In support of this claim, Plaintiff cites to *Chuy v. Eagles Football Club*, 505 F.2d 1265 (3d Cir. 1979), in which a claim of intentional infliction of emotional distress survived summary judgment in a case where the defendant doctor stated that the plaintiff was the victim of a fatal disease, knowing that was not true.  Plaintiff points to the *Chuy* court's characterization of the defendant's conduct as "intolerable professional conduct," and argues that Fish's conduct in this case rises to that level.

Even assuming that the "trumped up charges" amount to extreme and outrageous conduct on Fish's part, there is no evidence of the requisite physical manifestation of emotional harm resulting therefrom.  To satisfy the "physical manifestation" element of this claim, Plaintiff relies on a letter from Jason Brayer, M.D., in which he discusses Plaintiff's physical ailments and gives a diagnosis.  Dr. Brayer states that: "it is my opinion within a reasonable degree of medical certainty that the symptoms, injuries and treatment are referable to the motor vehicle accident of 5/31/09" Doc. No. 24, Ex. G at 7.  While this establishes harm from the collision, there is no "competent medical evidence" that Plaintiff suffered any physical injury or illness, or received any treatment as a result of Fish initiating criminal proceedings against her.  Thus, Fish's conduct in allegedly "trumping up charges" against Plaintiff cannot support a claim of intentional infliction of emotional distress, as the record is devoid of any "competent medical evidence" that Plaintiff suffered injury from that conduct.  *See Marable v. West Pottsgrove*, 2005 U.S. Dist. LEXIS 13754, at 41-42 (E.D. Pa. July 8, 2005) (dismissing intentional infliction claim brought against officers where there was no medical evidence); *Rolla v. Westmoreland Health Sys.*, 438 Pa. Super. 33, 651 A.2d 160, 163 (Pa. Super. Ct. 1994) (noting that plaintiff must allege physical injury to state a claim for intentional infliction of emotional distress).

Accordingly, summary judgment is appropriate on Plaintiff's claim of intentional infliction of emotional distress.

### E.   Qualified Immunity

Fish also moves for summary judgment, arguing that the doctrine of qualified immunity shields him from liability on Plaintiff's federal Constitutional claims. Qualified immunity provides immunity from suit in situations where a reasonable officer could have believed his conduct was lawful in light of clearly established law. *See Anderson v. Creighton*, 483 U.S. 635, 636 (1987); *Green v. City of Patterson*, 971 F.Supp. 891, 901 (D.N.J.1997). The doctrine provides sufficient room for mistakes in the officers' judgment, and serves to protect "all but the plainly incompetent or those who knowingly violate the law." *Green*, 971 F.Supp. at 901 (*quoting Orsatti*, 71 F.3d at 484) (further citations omitted). In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court established the standard for invoking a qualified immunity defense, stating that: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818 (internal citations omitted).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Court refined this standard by formulating a two-pronged inquiry into the officer's conduct: (1) whether, taken in the light most favorable to the plaintiff, the alleged facts indicate the deprivation of an actual constitutional right; and (2) if so, whether the right was clearly established such that a reasonable officer could have believed that the particular conduct at issue was lawful. Id. at 201, overruled in part on other grounds; *see also Holmes v. Cnty. of Del.*, 2007 WL 954122, at *4 (E.D.Pa. Mar.28, 2007); *Pagan v. Ogden*, 2010 WL 3058132, at *6 (E.D.Pa. July 30, 2010); *Bergdoll v. City of York*, 2009 WL 25093, at

28

*7–8 (M.D.Pa. Jan.5, 2009).   In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court

held that the sequence of the *Saucier* inquiry is not mandatory, and that district courts should

exercise their "sound discretion" in determining which prong to address first. *Id*. at 236.

 The first prong of *Saucier* instructs the Court to consider whether the facts alleged by

Plaintiff indicate that the officers' conduct violated a constitutional right. *Saucier*, 533 U.S. at

201.   Plaintiff contends that Fish violated her Fourth Amendment rights to be free from

unreasonable search and seizure when he falsely arrested her.   In response, Fish argues that he is

entitled to qualified immunity on Plaintiff's false arrest and malicious prosecution claims because

he had probable cause to arrest her, and therefore no constitutional violation occurred.   More

specifically, Fish alleges that probable cause existed for Plaintiff's arrest because she committed

motor vehicle code violations, eluded his efforts at conducting a traffic stop, drove recklessly in

an area where children were present, and backed her car into his.

 In this case, and as fully explained above, there are numerous unsettled facts surrounding

the issue of whether Plaintiff's arrest was supported by probable cause.   The Third Circuit has

cautioned the district courts that "a decision on qualified immunity [can] be premature when

there are unresolved disputes of historical fact which are relevant to the immunity analysis."

*Curley v. Klem*, 298 F.3d 271, 278 (3d Cir.2002).   The existence of disputed, historical facts

material to the objective reasonableness of an officer's conduct will give rise to a jury issue. *See*

*Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir.1997); *see also Karnes v. Skrutski*, 62 F.3d 485,

499 (3d Cir.1995).   We do not reiterate the competing factual contentions here, but note that

Plaintiff and Fish disagree on nearly every fact that is germane to the question of whether

probable cause existed.   If Plaintiff's version of events is fully credited by the jury, qualified

immunity would not attach.   Accordingly, Fish's motion for summary judgment on the basis of

qualified immunity is denied.

An appropriate Order follows.

BY THE COURT:

_/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE